Edward Greenberg, Esq. (ECG 5553)
Tamara L. Lannin, Esq. (TL 3784)
EDWARD C. GREENBERG, LLC
570 Lexington Ave., 17th Floor
New York, NY 10022
(212) 697-8777

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

HOWARD ROSENBERG,

                        Plaintiff,

      - against -

VIACOM, INC., VIACOM INTERNATIONAL, INC.
and CREATURE FILMS, INC.,

                    Defendants.

------------------------------------------------------------------x

**11 CIV 6687**

_____ CIV _____

**COMPLAINT**

**ECF CASE**

Plaintiff, HOWARD ROSENBERG, by his attorneys, EDWARD C. GREENBERG,

LLC, alleges as follows:

## PARTIES

1.   At all times hereinafter mentioned, HOWARD ROSENBERG was, and still is, a noted

and respected professional photographer, who with respect to matters relevant herein, has done

business in the form of a sole proprietorship.

2.   Plaintiff HOWARD ROSENBERG (hereinafter "Plaintiff" or "Rosenberg") is an

individual, actively engaged in the photography business in the State of New York, California, and

elsewhere, who resides at 2520 Sunset Boulevard, Los Angeles, California 90026.  That Howard

Rosenberg is a noted and respected professional photographer.

3. Defendant VIACOM, INC. is a foreign business corporation duly organized and existing under the laws of the State of Delaware, and is authorized to do business in New York, with its principal place of business located in this District at 1515 Broadway in New York, New York, 10036.

4. Defendant VIACOM INTERNATIONAL, INC. is a foreign business corporation duly organized and existing under the laws of the State of Delaware, and is authorized to do business in New York, with its principal place of business located in this District at 1515 Broadway in New York, New York, 10036.

5. Defendants VIACOM, INC. and VIACOM INTERNATIONAL, INC. (hereinafter collectively "VIACOM" or "VH1" appear to be inextricably intertwined to make it difficult to determine when one is acting as VIACOM, INC. or VIACOM INTERNATIONAL, INC. such that for the purposes of this Complaint, they will both be referred to as "VIACOM" or "VH1". That VH1 is a television station and registered trademark of MTV Networks, which is a corporate division or unit of one or more of VIACOM, INC. and/or VIACOM INTERNATIONAL, INC. That VH1 has offices located at 1515 Broadway, New York, New York, 10036.

6. Defendant CREATURE FILMS, INC. (hereinafter "CREATURE"), is a foreign business corporation duly organized and existing under the laws of the State of California, which upon information and belief, operates out of an office located at 11812 San Vicente Boulevard, Suite 200 in Los Angeles, California 90049. That, upon information and belief, the principal of CREATURE is one Michael Fishburn, who has offices to do business at and is authorized to do business in New York, with an office to conduct business located at 11812 San Vicente Boulevard, Suite 200 in Los Angeles, California 90049. That, upon information and belief, CREATURE does business in the State of New York.

## JURISDICTION AND VENUE

7. This is a civil action for copyright infringement.

8. Jurisdiction is conferred upon this Court by 28 U.S.C. Section 1338.

9. Venue in the Southern District of New York is proper pursuant to 28 U.S.C. 1400.

## FACTS COMMON TO ALL CLAIMS

10. That Plaintiff Rosenberg is a successful professional photographer with many years of experience and a considerable reputation.

### THE IMAGES

11. That Plaintiff, in or around 1989, took photographs of the hip hop music group "N.W.A." (hereinafter, the "Subject Image(s)" or the "Image(s)"). That Plaintiff ROSENBERG is the sole creator of and holds the copyright in the Subject Image(s), and duly registered same with the United States Copyright Office on October 2, 2008, registration numbers VAu 1-020-974 and VAu 973-251 (copies of said registrations are annexed hereto as Exhibit "A").

12. That N.W.A. was a popular hip hop group in the late 1980s and early 1990s, which is widely considered as one of the seminal acts of the "gangsta" rap sub-genre. That the music of N.W.A. was considered by many to be cutting edge or controversial, even being banned by some mainstream United States radio stations and under scrutiny by the Federal Bureau of Investigation. That N.W.A.'s album "Straight Outta Compton", which debuted in 1988, marked the beginning of the gansta rap revolution which continued into the 1990s, influencing hip hop music thereafter and into today.

13. That N.W.A. has been ranked by Rolling Stone as one of the "100 Greatest Artists of All Time".

14. That the primary group members of N.W.A. were "DJ Yella", "Dr. Dre", "Eazy-E",

and "Ice Cube", with "MC Ren" joining in 1988. That many of the aforementioned group members became platinum selling solo artists in the 1990s. That Dr. Dre went on to form a solo career and co-found the recording label "Death Row Records". Ice Cube became a producer, writer, actor, and is now widely known for his work in films such as "Boyz in the Hood", "Tresspass", "Dangerous Ground", "Anaconda", and the television shows "Are We There Yet?". That all of the former N.W.A. group members are forever tied to their involvement in N.W.A., which was arguably the first successful gangsta rap group. That Plaintiff's images of N.W.A. captured each of DJ Yella, Dr. Dre, Eazy-E, Ice Cube, and MC Ren, both together and separately.

15. That the Image(s) employed are of, *inter alia*, the five main group members of N.W.A., which broke up in 1991. That in late 1989, one of the founding members of the group, Ice Cube, left the band to pursue a solo career, making images featuring all five primary group members of the history-making line-up exceedingly rare. That founding member, Eazy E, deceased in 1996, making the Plaintiff's Image(s) literally impossible to recreate.

16. That Plaintiff's images of NWA were/are valuable to the Defendants, or one or more of them. That the value of plaintiff's Image is substantial because similar imagery is difficult to obtain as photographs of N.W.A., particularly of the nature and kind of plaintiff's, are extremely rare. That the value of Plaintiff's Image(s) is substantial due to the legendary status of the group.

17. That plaintiff's Image(s) of N.W.A. creatively capture the personalities of the group members of N.W.A. and have been considered by many to be the definitive images of the group. That said group and images are important elements of hip hop music history. That various blogs and even the Wikipedia page of N.W.A. features one of the Subject Images created by Howard Rosenberg.

4

## SHOOTING STAR AGENCY

18. That plaintiff is represented by a photographic stock agency, one Shooting Star Agency (hereinafter "Shooting Star" or "Star"), which syndicates his images throughout the world to editorial publications. That Plaintiff derives income from fees received resulting from such licensing.

19. That Shooting Star had in its collection, a small portion, but not all of the Subject Images. That the majority of the Subject Image(s) were in Plaintiff's personal archives, for which Shooting Star had virtually no authority to license on the Plaintiff's behalf.

20. That Christine Duell, who for the events relevant herein, acted on behalf of "Creature Films/Vh1", was made aware at her very first meeting with the Plaintiff that the majority of Plaintiff's N.W.A. Images were in Plaintiff's personal archives, and that licensing for Image(s) from Plaintiff's personal archives would not be available through Shooting Star.

## TIMELINE

21. That on July 7, 2008, one Christine Duell on behalf of "Creature Films/Vh1", sent an email to Plaintiff, which advised Plaintiff that defendants, or one or more of them, were "producing a documentary for VH1 on the rap group N.W.A." (a copy of said email is annexed hereto as Exhibit "B"). That said email requested to view plaintiff's images of N.W.A. and its members for potential licensing of same for the documentary "N.W.A.: The World's Most Dangerous Group" (hereinafter the "Documentary").

22. That said July 7, 2008 email from Christine Duell also notified plaintiff that Shooting Star Agency may have licensed some of his images. That such notice was unsettling to Plaintiff as he had previously requested Shooting Star to license his images for editorial use(s) in magazine(s), only.

5

23. In response to the July 7, 2008 email from Christine Duell (Exhibit "B"), Plaintiff asserted to the defendants, or one or more of them, that they were not to deal with Shooting Star with respect to the licensing of his images in a documentary as Shooting Star was not authorized by Plaintiff to license his images for that purpose.

24. That Plaintiff brought his images to a meeting with the defendants, or one or more of them for them to view same (hereinafter, the "Initial Meeting"). That at the Initial Meeting, defendants, or one or more of them, or one on behalf of one or more of them, offered Plaintiff $200 per image, for the use of said images in a documentary about N.W.A. That Plaintiff rejected said offer price.

25. That on August 21, 2008, one Amy Goodfriend ("Goodfriend"), who identified herself as "the permissions director for NWA: The World's Most Dangerous Group as produced by Creature Films for VH1", contacted plaintiff and offered him $2,500 for the use of seventeen (17) of his images in a documentary about N.W.A. (a copy of said email by Goodfriend, without its attachments, is annexed hereto as Exhibit "C"). Plaintiff rejected said offer but invited the possibility of negotiating an acceptable rate.

26. That on or about September 23, 2008, Ms. Goodfriend revealed to plaintiff that the defendants or one or more of them intended to employ twenty-six (26) of his images and offered Plaintiff $5,000 for such uses (a copy of such email is annexed hereto as Exhibit "D", which includes a sequence of emails with Amy Goodfriend). That despite the reference in the attachment to that email (see Exhibit "D") which states that there are "total = 22" images, that such attachment clearly shows 26 of plaintiff's images.

27. That on September 23, 2008, plaintiff, through his office, provided the following counter-proposal by email (a copy of said email is annexed hereto as Exhibit "D"):

> "#1) Licensing for use of 26 images (max screen time 3 seconds per image) within the documentary to be shown on VH1 for 3 years. Does not include any other uses including on-air promotion, trailer, online and wireless streaming, as well as publicity, advertising, poster, website, in-house, print, email blasts, billboard, dvd, etc . . . $11,700 plus tax. Prominent photo credit credit or 3x fees apply. Additional terms and conditions apply.

> #2) Licensing for use of 26 images (max screen time 3 seconds per image) within the documentary to be shown on VH1 for 3 years plus on-air promotion, trailer, online and wireless streaming, but not any of the other uses listed above. $15,600 plus tax. Prominent photo credit credit or 3x fees apply. Additional terms and conditions apply."

28. That plaintiff's licensing offer was rejected by Ms. Goodfriend, on behalf of the defendants or one or more of them as, "regardless of the rarity of the images, the money just isn't there".

29. That in or around September of 2008, while the above referenced correspondence between Goodfriend and Plaintiff was occurring, one Daniella Nivila-Cunningham, from VH1's New York office contacted Plaintiff and his agent, Shooting Star, via a single email addressed to both of them, requesting rights to employ some of his Images in publicity materials and "email blasts" (A copy of said email is annexed hereto as Exhibit "E", which includes emails from Daniella Nivila-Cunningham). That plaintiff immediately telephoned Daniella and instructed her that Shooting Star was not authorized to license his images for these purposes, but that she had to deal directly with Plaintiff. That no license for publicity or email blasts, or for any promotional purposes was ever granted by plaintiff to either VH1 or CREATURE FILMS for the use of any of his image(s).

30. That on October 2, 2008, Goodfriend again offered Plaintiff $5,000 for 26 of his Image(s), stating that "the show is supposed to premiere tomorrow night" and that she might have

7

to pull all of the images from the documentary if they cannot afford to use them. That plaintiff never granted defendants, nor one or more of them, a license to employ any of his images from his private collection, in any form, in any media, whatsoever.

31. That, also on October 2, 2008, before Plaintiff had a chance to respond to Goodfriend's most recent offer, Plaintiff received a telephone call from Matt Nardi of Shooting Star Agency. That Nardi advised Plaintiff that Amy Goodfriend had reached out to Shooting Star regarding a license of six (6) of plaintiff's N.W.A. images. That Nardi advised Plaintiff that Amy Goodfriend had offered to pay an additional $5,000 for the license of six (6) of Plaintiff's images of N.W.A.

32. That Shooting Star, on or about September 12, 2008, had licensed the same six of plaintiff's images to the defendants, or one or more of them at the rate of $150 per image, which as explained hereinabove was without plaintiff's approval (a copy of such invoice, hereinafter the "Unapproved Invoice", is annexed hereto as Exhibit "F"). That Ms. Goodfriend's offer, on behalf of the defendants or one or more of them, was to add an additional $5,000 to that figure and to request Mr. Rosenberg's authorization and consent for such license.

33. That despite the fact that Plaintiff had explicitly told Creature Films that they were not to negotiate with Shooting Star, Plaintiff agreed to allow Shooting Star to license six (6) of his images of N.W.A. from the set of images that were in Shooting Star's files for the additional amount of $5,000, with the clear understanding that the images could only appear within the context of the documentary, and not for any additional uses, including, but not limited to, publicity, advertising, promotion, or any other uses outside of the documentary itself. A copy of the invoice for same (hereinafter the "Approved Invoice"), is annexed hereto as Exhibit "G".

34. That, notably, said Authorized Invoice is dated October 10, 2008, which is subsequent to the date that defendants or one or more of them commenced employing plaintiff's images.

8

## THE DOCUMENTARY

35. That on October 3, 2008, the documentary "N.W.A. The World's Most Dangerous Group" premiered on VH1 as part of its Rock Docs.

36. That according to its press website (www.vh1press.com), VH1 reaches more than 96 million subscribers in the United States.

37. That defendants, or one or more of them, employed no less than 27 of plaintiff's registered Image(s) in the Documentary (copies of screen shots of Plaintiff's Images as employed in the Documentary are annexed hereto as Exhibit "H"). That many of said Image(s) appear in the Documentary at multiple times.

38. That notwithstanding that defendants were only granted a license to employ six (6) of plaintiff's images in the Documentary, defendants, or one or more of them, employed at least twenty-seven (27) of his images. That defendants, or one or more of them, employed at least twenty-one (21) of plaintiff's images without his license, authorization or consent.

39. That plaintiff's images are core to and highlighted in the Documentary, often encompassing the entire screen. That Plaintiff's Images augment the documentary and serve to depict the group N.W.A. only months after the release of their debut album "Straight Outta Compton".

40. That upon information and belief, defendants, or one or more of them, employed plaintiff's images in promotional videos, print, and/or press materials in connection with the documentary "N.W.A.: The World's Most Dangerous Group".

41. That the full nature and extent of defendant(s)' uses of plaintiff's Image(s) in promotional video(s), print advertisements and/or press materials in connection with the Offending Documentary is as yet unknown, such information being within the custody possession or control

of the defendants or one or more of them. That such information is likely to be learned through discovery in this action.

42. That, upon information and belief, defendant(s)' use(s) of plaintiff's images in connection with the promotion, advertisement and/or marketing of plaintiff's images, as specified in more detail hereinbelow, was intended to and did confer an economic benefit upon defendants, or one or more of them.

PRESS AND ARTICLES

43. That, upon information and belief, defendants, or one or more of them, employed plaintiff's image(s) and/or provided, distributed, and/or made them available to photo editors, magazines, or other media outlets for the purpose of including them in promotional articles and/or reviews of the Documentary. That such offending uses by the defendants, or one or more of them, were calculated to and did indeed confer a benefit upon the defendants, or one or more of them.

44. That defendant(s)' use(s) of plaintiff's images in "email blast[s]", "in-house" materials, promotional "articles", and/or "reviews of the film" are referenced in emails by one Daniella Nilva-Cunningham, who represents herself as "Senior Photo Manager" for "VH1 Creative" out of VH1's New York office (copies of such emails are annexed hereto as Exhibit "E").

45. That, upon information and belief, defendants, or one or more of them, employed plaintiff's image(s) and/or provided, distributed, and/or made them available to photo editors, magazines, third parties, and/or other media outlets for the purpose of including them in promotional articles and/or reviews of the Documentary, including but not limited to on the following websites, or one or more of them (screen captures of such offending uses are annexed hereto as Exhibit "I"):

| Name of Website | Date of Post | URL address for Website employing Plaintiff's Image |
|---|---|---|
| Docs That Rock | October 2, 2008 | http://docsthatrock.wordpress.com/2008/10/02/the-worlds-most-dangerous-group/ |
| Hip Hop Ruckus | September 25, 2008 | http://hiphopruckus.com/2008/09/nwa-documentary-aires-on-vh1.html/#.TnqkmeyJZdg |
| Blurt | September 9, 2008 | http://blurt-online.com/news/view/863/ |
| Soul Bounce | October 1, 2008 | http://soulbounce.com/soul/2008/10/nwa_is_most_dangerous_in_new_v.php |
| Wikipedia | September 17, 2009 | http://en.wikipedia.org/wiki/N.W.A |

### PROMOTIONAL VIDEOS

46. That defendants, or one or more of them, employed at least four (4) of plaintiff's images in a video to promote the Documentary (hereinafter "Promotional Video 1"), which was aired and/or broadcast on VH1 as a news segment on the show "VH1 News" (copies of such offending use(s) are annexed hereto as Exhibit "J").

47. That Said Promotional Video 1 is available for viewing on defendant VH1's website at the address of http://www.vh1.com/video/misc/280263/vh1-news-nwa-rock-doc.jhtml as of the date of this Complaint (see Exhibit "J").

48. That according to the VH1 press website (www.vh1press.com), VH1.com currently ranks in the top 5 of the Media Metrix rankings of all music web sites on the Internet.

49. That, upon information and belief, defendants, or one or more of them, or one on behalf of one or more of them, employed additional of plaintiff's registered image(s) in a video to promote the Documentary (hereinafter "Promotional Video 2"), which was uploaded to and/or posted at least on a MySpace Page entitled "VH1 Rock Doc: NWA: The World's Most Dangerous Group", at the website address of http://www.myspace.com/video/vh1-rock-docs/vh1-rock-doc-nwa-the-world-39-s-most-dangerous-group/43935835, for the purpose of promoting and increasing viewership for the Documentary. A page screen of the offending Promotional Video 2 as

11

employed on MySpace is included within Exhibit "K".

50. That Promotional Video 2 employed at least four (4) of our client's registered images without his license, authorization or consent. That screen captures of plaintiff's image(s) within Promotional Video 2 are annexed hereto within Exhibit "K".

51. That, upon information and belief, defendants, or one or more of them, of one on behalf of one or more of them, enabled and /or instructed that Promotional Video 2 appear on a MySpace Page in connection with the promotion for and/or advertisement of the Documentary.

52. That, upon information and belief, defendants, or one or more of them, uploaded to, post on, and/or distributed to third parties Promotional Video 2 for use on at least the website(s) Metacafe.com and/or Viddler.com and/or Veoh.com for the promotion, marketing and/or advertisement of the Documentary. That as of the date of this Complaint, said Promotional Video 2 is available on the Metacafe website at the address of http://www.metacafe.com/watch/1822395/vh1_rock_doc_nwa_the_worlds_most_dangerous_grou p/, and the Viddler website at the address of http://www.viddler.com/explore/vh1rockdocs/videos/10, and the Veoh website at the address of http://www.veoh.com/watch/v16124371F2JjzRnf?h1=VH1+Rock+Doc%3A+NWA%3A+The+W orld%27s+Most+Dangerous+Group.  Screen captures of such offending use(s) of Promotional Video 2 are annexed hereto as Exhibit "K".

53. That, upon information and belief, each of Promotional Video 1 and Promotional Video 2, or one or more of them, were uploaded to, post on, and/or distributed to additional third parties (the identities of which are as yet unknown to plaintiff, but which are expected to be learned through discovery) for the promotion, marketing, press release, and/or advertisement of the Documentary.

## VH1 PHOTO GALLERY

54. That Defendant, VH1, employed at least one (1) of plaintiff's images in a photo gallery for the group N.W.A., in a gallery entitled "N.W.A.", which is available for viewing on its website as of the date of this complaint at the address of http://www.vh1.com/photos/gallery/?fid=734&pid=3203571&dyn=artist. That page screens of such offending use are annexed hereto as Exhibit "L".

## FACEBOOK PAGE

55. That, upon information and belief, defendants, or one or more of them, employed plaintiff's image by uploading and/or posting same to a Facebook Even Page entitled "VH1 Rock Doc: NWA: The World's Most Dangerous Group" with a location in New York and the United Kingdom (a copy of such offending use is annexed hereto as Exhibit "M").

56. That, upon information and belief, VH1 aired the offending Documentary, which employs plaintiff's images, in both the United States and the United Kingdom.

57. That the full nature and extent of defendant(s)' uses of plaintiff's images is as yet unknown, such information being within the sole custody, possession or control of the defendants, or one or more of them.

58. That upon information and belief, defendants have employed plaintiff's image in additional geographic venues and/or on dates additional to October 3, 2008.

59. That defendants, or one or more of them re-aired the offending documentary, at least on July 9, 2011.

## ADDITIONAL INVOICE

60. That, upon information and belief, Amy Goodfriend, on behalf of the defendants, or one or more of them, contacted Shooting Star Agency and requested that they provide defendants,

13

or one or more of them with an invoice for the license of plaintiff's images, with "26" as the number of images for "bookkeeping purposes". Despite the unusual request, Shooting Star Agency did as requested and furnished an invoice, with an invoice number of 116435 dated October 2, 2008 (hereinafter the "Inaccurate Invoice"), a copy of which is annexed hereto as Exhibit "N".

61. That plaintiff never authorized Shooting Star Agency to license 26 of his images. That Shooting Star Agency did not even have in its library 26 of Plaintiff's Images of N.W.A. That Shooting Star Agency only licensed to defendants, or one or more of them, six (6) of plaintiff's Image(s).

62. That subsequent to the issuance of the Inaccurate Invoice, Shooting Star issued a separate invoice, with an invoice number of 116458, dated October 10, 2008 (a copy of which is annexed hereto as Exhibit "G"), which expressly stated thereon that it replaced Invoice No. 116435 (the Inaccurate Invoice).

63. That on or about April of 2010, Amy Goodfriend sent an email to Shooting Star Agency which clarifies that the defendants, or one or more of them only licensed six (6) of plaintiff's images for use in the documentary. A copy of said letter, and the email containing said letter are annexed hereto as Exhibit "O".

MISCELLANEOUS

64. That the full nature and extent of the use(s) of plaintiff's image by the defendants, or one or more of them, is unknown to plaintiff pre-discovery as such is within the sole knowledge of the defendants, or one or more of them.

65. That Plaintiff, by counsel, issued and delivered correspondence dated September 14, 2011 to defendants VIACOM and CREATURE FILMS. That said notice letters, copies of which

14

are annexed hereto as Exhibit "P" (without their exhibits), advised defendants that *inter alia*, they were in violation of plaintiff's copyright through the use of the Image(s), they should provide any information that might rebut the plaintiff's presumption that the Image(s) had been unlawfully used in violation of Plaintiff's copyrights, and that they should provide copies of any exculpatory evidence upon which it/they would rely for the proposition that its/their use of the Image(s) were unauthorized. That plaintiff notified defendants that they had at least seven days to provide said information and that plaintiff has not received a meaningful response to same.

66. That, as of the date of this complaint, and as of at least September 23, 2011, VIACOM has failed to respond to Plaintiff's Counsel's letter.

67. That upon information and belief, defendants, or one or more of them, continue to employ plaintiff's Image.

68. That such post notice use is particularly egregious and willful.

69. That each of VIACOM and upon information and belief CREATURE FILMS, or one or more of them, are exceptionally sophisticated licensees and licensors of intellectual property and employ persons expert in all aspects of licensing, rights management and related matters. That each of VIACOM and upon information and belief CREATURE FILMS, or one or more of them, have extensive resources including but not limited to in house legal counsel and outside legal counsel available to its employees to assure compliance with all appropriate business protocols and federal or state statutes including but not limited to USC Title 17.

70. That defendants, or one or more of them, knew or should have known of the procedures and protocols for the licensing intellectual property created by third parties.

71. That notwithstanding that defendants, or one or more of them, or ones on behalf of htem, contacted plaintiff to seek a license for at least a portion of the offending uses, no such

15

license was granted, except with respect to six images from Shooting Star Agency for use in the Documentary, only, such license not extending to press, promotion, marketing materials, photo albums, or any uses outside of the actual documentary, whatsoever.

72. That said use(s) of plaintiff's image(s) by the defendants, or one or more of them, in connection with, *inter alia*, articles, reviews, promotional videos, VH1 News reports, blogs, website photo albums, Facebook postings, and/or MySpace Postings were without plaintiff's license authorization or consent.

73. That as of result of the defendants, or one or more of them, employing Plaintiff's Image(s) on the VH1 website and/or in connection with promotional articles, advertisements, and/or reviews, plaintiff's images have been made available for others to appropriate and republish with ease. That, consequently, plaintiff's iconic Image(s) are now published on countless web pages in violation of plaintiff's copyright.

74. That, upon information and belief, the defendants, or one or more of them, were fully aware at all times relevant herein that it lacked a written license or permission necessary to employ the use of at least twenty-one (21) of Plaintiff's Image(s) in any form, and at least twenty-seven (27) of Plaintiff's Images in any articles, reviews, promotional videos, VH1 News reports, blogs, website photo Albums, or on Facebook and/or MySpace. That, notwithstanding such knowledge, defendant, or one or more of them, wholly failed to obtain a license or permission from the Plaintiff. That such failure to obtain a license, consent, or permission from the Plaintiff constitutes negligence, if not willful infringement.

75. That, here, defendants, or one or more of them, inexplicably, negligently and/or willfully did not follow such standard procedures by not seeking a license for all of the offending uses from Plaintiff.

16

76. That defendants, or one or more of them, knew or should have known that Plaintiff is the copyright holder of the subject Image. That Plaintiff's were on actual notice that plaintiff holds the copyright in the subject images, and discussed in detail the prospective licensing of the subject Images for use in the Offending Documentary.

77. That pursuant to Federal Rule 11, Plaintiff sought to obviate litigation and resolve the matters complained of herein.

78. That subsequent Plaintiff's letter of September 14, 2011, defendants, or one or more of them, have *continued* to use Plaintiff's registered image(s), without his authorization, consent, or license.

79. That as of the date of this complaint, the parties have been unable resolve their disputes without the need for litigation, despite plaintiff's good faith attempts at same.

80. That the defendant has no defense at law to the claims set forth herein.

81. Paragraphs "1" through "82" are incorporated by reference with respect to each of the below counts or claims for relief.

### FIRST CLAIM FOR RELIEF
Copyright Infringement
Under Section 501 of the Copyright Act

82. That the use(s) of at least twenty-one (21) of Plaintiff's Image(s) by the defendants, or one or more of them, in connection with the Documentary "NWA: The World's Most Dangerous Group" were and are without the plaintiff's authorization, license or consent.

83. That the use(s) of at least twenty-seven (27) of Plaintiff's Images by the defendants, or one or more of them, in connection with the promotion, marketing, advertising, and/or press related to the Documentary "NWA: The World's Most Dangerous Group" were and are without the plaintiff's authorization, license or consent.

17

84. That the use of at least four (4) of Plaintiff's Images by the defendants, or one or more of them, in the Promotional Video 1 in connection with "NWA: The World's Most Dangerous Group" were and are without the plaintiff's authorization, license or consent.

85. That the use of at least four (4) of Plaintiff's Images by the defendants, or one or more of them, in the Promotional Video 2 in connection with "NWA: The World's Most Dangerous Group" were and are without the plaintiff's authorization, license or consent.

86. That the use(s) of at least one (1) of Plaintiff's Images by the defendants, or one or more of them, in a VH1 photo album on the VH1 website wand and is without the plaintiff's license, authorization or consent.

87. That, upon information and belief, the defendants, or one or more of them have infringed the copyright for Plaintiff's Image(s).

88. That, upon information and belief, the aforementioned acts of the defendants, or one or more of them, constitute federal statutory copyright infringement under Section 501 of the Copyright Act in violation of the rights granted to ROSENBERG as copyright holder.

89. That the use of each image by each defendant constitutes a separate and distinct infringement of Plaintiff's copyright. That, upon information and belief, defendants, or one or more of them, individually and/or collectively, have infringed no less than twenty-seven (27) of plaintiff's copyright(s).

90. That, upon information and belief, defendant(s)' use(s) of the subject Image were willful, intentional and in bad faith.

91. That, upon information and belief, defendants, or one or more of them, had actual and/or constructive knowledge and/or through the exercise of ordinary business care and/or the examination of public records, knew or should have known that the plaintiff held the copyright in

the Image, that neither defendants, nor one or more of them, ever had (at any of the relevant times herein) a license, consent, or authorization by plaintiff for the use of Plaintiff's image as complained of herein by the defendants, or one or more of them, and that any such use(s) would be in violation of Plaintiff's copyright.

92. That as a result of defendant(s)' acts, plaintiff has been and will continue to be damaged in an amount as yet to be determined. Indeed, notwithstanding, Plaintiff's counsel's letter referenced hereinabove (Exhibit "P"), the date(s) or term(s) of use(s) of plaintiff's image is as yet unknown, such information being within the sole custody, possession, and control of the defendants, or one or more of them.

93. That Plaintiff is further entitled to damages, attorneys' fees and costs under Section 504 and 505 of the Copyright Act, 17 U.S.C. Section 101 et., seq., given the willful, intentional, malicious and bad faith nature of defendant(s)' copyright infringement, and as an alternative to statutory damages, Plaintiff, at her election prior to judgment is entitled to recover her actual damages and any additional profits of the defendants, or one or more of them, attributable to the infringement as under 17 U.S.C. Sections 504 (a)-(b).

**SECOND CLAIM FOR RELIEF**
Copyright Infringement
Under Section 501 of the Copyright Act

94. That the use(s) of at least twenty-one (21) of Plaintiff's Image(s) by the defendants, or one or more of them, in connection with the Documentary "NWA: The World's Most Dangerous Group" were and are without the plaintiff's authorization, license or consent.

95. That the use(s) of at least twenty-seven (27) of Plaintiff's Images by the defendants, or one or more of them, in connection with the promotion, marketing, advertising, and/or press related to the Documentary "NWA: The World's Most Dangerous Group" were and are without

19

the plaintiff's authorization, license or consent.

96. That the use of at least four (4) of Plaintiff's Images by the defendants, or one or more of them, in the Promotional Video 1 in connection with "NWA: The World's Most Dangerous Group" were and are without the plaintiff's authorization, license or consent.

97. That the use of at least four (4) of Plaintiff's Images by the defendants, or one or more of them, in the Promotional Video 2 in connection with "NWA: The World's Most Dangerous Group" were and are without the plaintiff's authorization, license or consent.

98. That the use(s) of at least one (1) of Plaintiff's Images by the defendants, or one or more of them, in a VH1 photo album on the VH1 website wand and is without the plaintiff's license, authorization or consent.

99. That, upon information and belief, the defendants, or one or more of them have infringed the copyright for Plaintiff's Image(s).

100.     That, upon information and belief, the aforementioned acts of the defendants, or one or more of them, constitute federal statutory copyright infringement under Section 501 of the Copyright Act in violation of the rights granted to ROSENBERG as copyright holder.

101.     That the use of each image by each defendant constitutes a separate and distinct infringement of Plaintiff's copyright. That, upon information and belief, defendants, or one or more of them, individually and/or collectively, have infringed no less than twenty-seven (27) of plaintiff's copyright(s).

102.     That, upon information and belief, defendants, or one or more of them, had actual and/or constructive knowledge and/or through the exercise of ordinary business care and/or the examination of public records, knew or should have known that the plaintiff held the copyright

in the Image, that neither defendants, nor one or more of them, ever had (at any of the relevant times herein) a license, consent, or authorization by plaintiff for the use of Plaintiff's image as complained of herein by the defendants, or one or more of them, and that any such use(s) would be in violation of Plaintiff's copyright.

103.    That, upon information and belief, defendant(s)' use(s) of the Image(s) in violation of plaintiff's copyright were negligent in that defendants, or one or more of them, knew or should have known that it was without a license for the use(s) complained of herein.

104.    That as a result of defendant(s)' acts, plaintiff has been and will continue to be damaged in an amount as yet to be determined. Indeed, notwithstanding, Plaintiff's counsel's letter referenced hereinabove (Exhibit "P"), the date(s) or term(s) of use(s) of plaintiff's image is as yet unknown, such information being within the sole custody, possession, and control of the defendants, or one or more of them.

105.    That Plaintiff is further entitled to damages, attorneys' fees and costs under Section 504 and 505 of the Copyright Act, 17 U.S.C. Section 101 et., seq., given the willful, intentional, malicious and bad faith nature of defendant(s)' copyright infringement, and as an alternative to statutory damages, Plaintiff, at her election prior to judgment is entitled to recover her actual damages and any additional profits of the defendants, or one or more of them, attributable to the infringement as under 17 U.S.C. Sections 504 (a)-(b).

### THIRD CLAIM FOR RELIEF
Induced Copyright Infringement
Under Section 501 of the  Copyright Act

106. That, upon information and belief, defendants, or one or more of them, have directly infringed Plaintiff's copyright(s) by, *inter alia* employing, broadcasting, printing, manufacturing, editing, cropping, sublicensing, distributing, and/or enabling the copying or appropriation of

Plaintiff's Image(s) (or unauthorized derivative works thereof) as described more fully hereinabove, in violation of Plaintiff's exclusive rights under the Copyright Act, 17 U.S.C. Sections 106 and 501.

107. That, upon information and belief, defendants, or one or more of them, are liable for inducing the copyright infringement(s) of various third parties who have copied and re-published plaintiff's Image(s) to various blogs and/or websites.

108. That defendants, or one or more of them, have selected, employed, broadcast, printed, manufactured, modified, altered, edited, cropped, distributed, sublicensed, provided, and/or enabled the copying or appropriation of Plaintiff's Image(s) or derivative work(s) thereof for use in connection with, *inter alia*, promotional videos, promotional articles, and/or reviews of the Documentary as specified hereinabove.

109. That, as explained herein, upon information and belief, defendants, or one or more of them, have actively facilitated, encouraged, and/or enticed at least DocksThatRock.com, HipHopRuckus.com, Blurt-Online.com, SoulBounce.com, MetaCafe.com, Viddler.com, Veoh.com, Youtube.com, Facebook.com and Myspace.com, or one or more of them, to commit copyright infringement.

110. That defendants, or one or more of them, upon information and belief, have induced and/or continue to induce infringement(s), willfully and/or negligently by, *inter alia:* employing, broadcasting, printing, publishing, distributing, manufacturing, or enabling the copying of plaintiff's Image(s), or derivative work(s) thereof – in at least the following forms, or one or more of them, thereby inducing third parties, including but not limited to DocksThatRock.com, HipHopRuckus.com, Blurt-Online.com, SoulBounce.com, MetaCafe.com, Viddler.com, Veoh.com, Youtube.com, Facebook.com and Myspace.com, or one or more of them, to infringe on

22

Plaintiff's copyright(s):

> a) the Documentary as broadcast and/or re-aired on VH1;
>
> b) Promotional Videos [1, 2, 3, and/or 4] which are still available on the internet;
>
> c) Promotional Video 1 which is as of the date of this Complaint available on the VH1 website as well as other websites;
>
> d) the Photo Gallery which includes Plaintiff's Image(s) of N.W.A., which has been and continues to be available on the VH1 website; and
>
> e) various promotional or marketing articles, reviews, and postings as specified in more detail hereinabove, the full nature and extent of which is unknown to plaintiff pre-discovery, but which is likely to be learned through same.

111. That said infringements have continued post notice, with defendants, or one or more of them having received constructive and/or actual notice of Plaintiff's copyrights and the corresponding infringement(s).

112. That defendants, or one or more of them, upon information and belief, have further induced and/or continue to induce infringement(s) by, *inter alia*, taking affirmative steps towards the selection of Plaintiff's Image(s) for use in connection with, *inter alia*, promotional videos, promotional articles, and/or reviews of the Documentary, and/or photo galleries, and website postings, as specified hereinabove, and/or providing, selecting, publishing, distributing, sublicensing, or enabling the copying or appropriation of such Image(s) to others, thereby inducing third parties, including but not limited to DocksThatRock.com, HipHopRuckus.com, Blurt-Online.com, SoulBounce.com, MetaCafe.com, Viddler.com, Veoh.com, Youtube.com,

Facebook.com and Myspace.com, or one or more of them, to infringe on Plaintiff's copyright(s).

113. That, upon information and belief, at all times relevant herein, defendants, or one or more of them, were on constructive and/or actual notice of Plaintiff's rights to the Image(s), and that any unauthorized use(s) thereof would be in violation of Plaintiff's copyright(s).

114. That, upon information and belief, defendants, or one or more of them, failed to implement and/or properly and/or adequately execute rights clearance procedures with respect to Plaintiff's Image(s), thus employing and/or inducing the infringement of Plaintiff's Image(s) in violation of Plaintiff's copyright(s).

115. That, upon information and belief, defendants, or one or more of them, relied on the use of Plaintiff's Image(s) and/or derivative works thereof for the success of its business and/or the promotion or marketing thereof.

116.        That the use of each image by each defendant constitutes a separate and distinct infringement of Plaintiff's copyright. That, upon information and belief, defendants, or one or more of them, individually and/or collectively, have infringed no less than twenty-seven (27) of plaintiff's copyright(s).

117. That, upon information and belief, through the acts described hereinabove, defendants, or one or more of them, are liable for inducing the infringement(s) described herein.

118. That, upon information and belief, defendant(s)' infringement(s) are and have been willful, intentional, purposeful, and with disregard of the rights of Plaintiff, and have caused substantial damage to Plaintiff.

119. That as a direct and proximate result of defendant(s)' infringement(s), Plaintiff is entitled to the maximum statutory damages under 17 U.S.C. Section 504 (c), and as an alternative to statutory damages, Plaintiff, at his election prior to judgment is entitled to recover his actual

damages and any additional profits of the defendants, or one or more of them, attributable to the infringement(s) as under 17 U.S.C. Sections 504 (a)-(b).

120. That pursuant to 17 U.S.C. Section 505, Plaintiff is entitled to his costs, including reasonable attorneys' fees.

### FOURTH CLAIM FOR RELIEF
#### Contributory Copyright Infringement
#### Under Section 501 of the Copyright Act

121. That, upon information and belief, defendants, or one or more of them, have directly infringed Plaintiff's copyright(s) by, *inter alia* employing, broadcasting, printing, manufacturing, editing, cropping, sublicensing, distributing, and/or enabling the copying or appropriation of Plaintiff's Image(s) (or unauthorized derivative works thereof) as described more fully hereinabove, in violation of Plaintiff's exclusive rights under the Copyright Act, 17 U.S.C. Sections 106 and 501.

122. That, upon information and belief, defendants, or one or more of them, are liable as contributory infringer(s) for the copyright infringement(s) committed via: selecting, employing, broadcasting, printing, manufacturing, editing, cropping, sublicensing, distributing, and/or enabling the copying or appropriation of Plaintiff's Image(s); and that such use(s) were in violation of Plaintiff's copyrights.

123. That, upon information and belief, defendant, or one or more of them, had actual and/or constructive knowledge and/or through the exercise of ordinary business care and/or the examination of public and/or business records, knew or should have known that Plaintiff held rights in the Image(s), and that any unauthorized use of such Image(s) or of derivative works thereof was in violation of Plaintiff's copyright(s).

124. That upon information and belief, defendants, or one or more of them, knew or should

have known that it/they was not authorized to use Plaintiff's Image(s).

125. That, upon information and belief, defendants, or one or more of them, have directly and/or indirectly, willfully and/or negligently caused, enabled, encouraged, facilitated, and/or materially contributed to the infringement(s) described herein by selecting, employing, broadcasting, printing, publishing, manufacturing, editing, cropping, sublicensing, distributing, and/or enabling the copying or appropriation of Plaintiff's Image(s), in violation of Plaintiff's copyrights.

126. That, upon information and belief, defendants, or one or more of them, have in addition to the actions above, provided the tools (i.e. a print or electronic copy(ies) of Plaintiff's Image(s), and/or electronically displayed the Image(s) in a manner whereby they could be copied or appropriated), support, and/or instruction for the infringement(s), via the infringements described herein, in violation in Plaintiff's copyright(s).

127. That, upon information and belief, defendant, or one or more of them, by *inter alia*, selecting, distributing, modifying, altering, cropping, editing, sublicensing, providing, and/or enabling the copying or appropriation of the Image(s) in connection with *inter alia*, promotional videos, promotional articles, and/or reviews of the Documentary as specified hereinabove, contributed to the infringement(s) by third parties and at least DocksThatRock.com, HipHopRuckus.com, Blurt-Online.com, SoulBounce.com, MetaCafe.com, Viddler.com, Veoh.com, Youtube.com, Facebook.com and Myspace.com, or one or more of them.

128. That, upon information and belief, defendants, or one or more of them, had actual and/or constructive knowledge and/or through the exercise of ordinary business care and/or the examination of public and/or business records, knew or should have known of Plaintiff's rights in the Image(s), and that any use of such Image(s) or of derivative works thereof would be in

violation of Plaintiff's copyright(s).

129.　　　　That the use of each image by each defendant constitutes a separate and distinct infringement of Plaintiff's copyright(s). That, upon information and belief, defendants, or one or more of them, individually and/or collectively, have infringed no less than twenty-seven (27) of plaintiff's copyright(s).

130. That, upon information and belief, through the conduct described hereinabove, defendants, or one or more of them, are contributorily liable for the infringement(s) described herein.

131. That, upon information and belief, the aforementioned acts of the defendants, or one or more of them, constitutes federal statutory contributory copyright infringement under Section 501 of the Copyright Act in violation of the exclusive rights granted ROSENBERG as copyright holder.

132. That, upon information and belief, defendant(s)' infringement(s) are and have been willful, intentional, purposeful, and/or in disregard of the rights of Plaintiff, and have caused substantial damage to Plaintiff.

133. That as a direct and proximate result of defendant(s)' infringement(s), Plaintiff has been and will continue to be damaged in an amount as yet undetermined. Indeed, the full nature and extent of defendant(s)' use of Plaintiff's Images is as yet unknown, such information being within the sole custody, possession, and control of the defendants, or one or more of them.

134. That Plaintiff is entitled to the maximum statutory damages under 17 U.S.C. Section 504 (c), and as an alternative to statutory damages, Plaintiff, at his election prior to judgment is entitled to recover his actual damages and any additional profits of the defendants, or one or more of them, attributable to the infringement(s) as under 17 U.S.C. § 504 (a)-(b).

135. That Plaintiff is further entitled to damages, attorneys' fees and costs under Section 504 and 505 of the Copyright Act, 17 U.S.C. Section 101 et., seq., given the repeated and systematic, willful, intentional, malicious and bad faith nature of defendant(s)' copyright infringement(s).

## JURY DEMAND

136.    That Plaintiff requests a trial by jury of all issues.

**WHEREFORE,** Plaintiff demands judgment as against the defendant as follows:

**ON  THE FIRST CLAIM FOR RELIEF**-  (A) Award to plaintiff his actual damages incurred as a result of defendant(s)' infringement(s), and all profits realized as a result of its infringement(s), in amounts to be determined at trial; or (B) in the alternative, at plaintiff's election, award to plaintiff maximum statutory damages pursuant to 17 U.S.C. § 504 for each separate and distinct act of infringement, and for an order of injunction permanently enjoining and prohibiting the defendants, or one or more of them, including but not limited to wholly owned subsidiaries and/or affiliates, from employing or utilizing in any manner or media whatsoever, including all future uses, sales, transfers, assignments, or licensing of any and all of plaintiff's copyrighted images, pursuant to 17 U.S.C. § 502 and for an award of costs and attorneys' fees pursuant to 17 U.S.C. § 505;

**ON THE SECOND CLAIM FOR RELIEF**-  (A) Award to plaintiff his actual damages incurred as a result of defendant(s)' infringement(s), and all profits realized as a result of its infringement(s), in amounts to be determined at trial; or (B) in the alternative, at plaintiff's election, award to plaintiff maximum statutory damages pursuant to 17 U.S.C. § 504 for each separate and distinct act of infringement, and for an order of injunction permanently enjoining and prohibiting the defendants, or one or more of them, including but not limited to wholly

owned subsidiaries and/or affiliates, from employing or utilizing in any manner or media whatsoever, including all future uses, sales, transfers, assignments, or licensing of any and all of plaintiff's copyrighted images, pursuant to 17 U.S.C. § 502 and for an award of costs and attorneys' fees pursuant to 17 U.S.C. § 505;

**ON THE THIRD CLAIM FOR RELIEF** - (A) Award to plaintiff his actual damages incurred as a result of defendant(s)' infringement(s), and all profits realized as a result of its infringement(s), in amounts to be determined at trial; or (B) in the alternative, at plaintiff's election, award to plaintiff maximum statutory damages pursuant to 17 U.S.C. § 504 for each separate and distinct act of infringement, and for an order of injunction permanently enjoining and prohibiting the defendants, or one or more of them, including but not limited to wholly owned subsidiaries and/or affiliates, from employing or utilizing in any manner or media whatsoever, including all future uses, sales, transfers, assignments, or licensing of any and all of plaintiff's copyrighted images, pursuant to 17 U.S.C. § 502 and for an award of costs and attorneys' fees pursuant to 17 U.S.C. § 505;

**ON THE FORTH CLAIM FOR RELIEF** - (A) Award to plaintiff his actual damages incurred as a result of defendant(s)' infringement(s), and all profits realized as a result of its infringement(s), in amounts to be determined at trial; or (B) in the alternative, at plaintiff's election, award to plaintiff maximum statutory damages pursuant to 17 U.S.C. § 504 for each separate and distinct act of infringement, and for an order of injunction permanently enjoining and prohibiting the defendants, or one or more of them, including but not limited to wholly owned subsidiaries and/or affiliates, from employing or utilizing in any manner or media whatsoever, including all future uses, sales, transfers, assignments, or licensing of any and all of plaintiff's copyrighted images, pursuant to 17 U.S.C. § 502 and for an award of costs and

29

attorneys' fees pursuant to 17 U.S.C. § 505;

Prejudgment interest on all sums due;

And such other and further relief as this Court may deem just and proper inclusive of any and all relief or remedies allowable by the statutes referenced above or applicable hereinabove.

Dated: New York, New York

September 23, 2011

Yours, etc.,

Edward Greenberg, Esq. (ECG 5552)
Tamara L. Lannin, Esq. (TL 3784)
EDWARD C. GREENBERG, LLC
570 Lexington Avenue, 17th Floor
New York, NY 10022
Tel: (212) 697-8777
Fax: (212) 697-2528
*Attorneys for Plaintiff*